21-14409. Arthur Davis for the appellant has reserved five minutes for rebuttal and Ross Bergeson for the rebuttal. Mr. Davis, you may approach and proceed when you are ready. Your Honors, good morning. Thank you so much for the privilege of appearing before this court today. Judge Branch, Judge Brasher, Judge Carnes, it's good to see you. My name is Arthur Davis and I have the honor of representing Ms. Tequila Monroe. Ms. Monroe was the Program Director of the Early Head Start Head Start Program that was operating out of Fort Valley State University. After a number of months of raising complaints about what she believed was systematic fraud and billing irregularities, Ms. Monroe was terminated. This case, Your Honors, turns on a very concrete question. Did Congress mean to protect whistleblowers like Tequila Monroe if they suffered retaliation for reporting fraud? And did Congress make its intent so unambiguously clear that it passes the standard for abrogation? Your Honors, I would submit we can give short shrift to the first half of that question today. The Board of Regents did not, in its briefing of this matter, dispute what I'll call the core statutory construction issue. 3730H1 of the False Claims Act says that employees can bring suit. It does not draw a distinction between whether they are public or private in nature. And as of 2009, 3730H1 removes any limitation on who can be sued when previous iterations of the Act contains its limitations. So the first part of the inquiry, what we sometimes call the core statutory construction analysis, is a simple one. Let me go now to the heart of the matter, which is whether Congress's intent was so unmistakably clear as to abrogate. Your Honors, I recognize the power of sovereign immunity. I understand it's rooted in our notions of who we are as a national community. I understand the liberties it's meant to protect. But there is a school of thought that to abrogate, perhaps we ought to require Congress to be almost crystal clear to the point that it says we abrogate. I think the Supreme Court tells us what we need to do and we need to look to the statute to see if it's unmistakably clear in the language of the statute. So that's the school of thought I'm interested in. Judge, that's correct, and I want to align my position very much with that school of thought, because with candor to the Court, I think that some courts have gone further than that. I think that some panels have occasionally gone further than that to say that there needs to be an almost declaration. For example, some courts have said there needs to be a reference to states being sued. Some panels have said there needs to be a consideration of the issue clear in the language of the statute. Okay, but tell me where in the text of the retaliation provision it is unmistakably clear of the intent to abrogate. Judge, here's how I want to answer that question. This Court has conducted a statutory construction analysis every time it's looked at the question of abrogation. And a statutory construction analysis looks at the text. It looks at the ordinary meaning of the text. It looks at the structure of the text. So three points from looking at this statute. The statute, as of 2009, permits all employees with no limitation as to who pays their salary, a public or private entity, to bring suit. Second of all, as of 2009, this statute contains no limitation, none on who can be sued. Third of all, the amendment in 2009 is on the heels of a decision by the Supreme Court in 2000, which addressed the sister of this statute, the quitam section. Justice Scalia said in Ms. Stevens' decision in 2000 that there is no — he didn't reach the issue of abrogation, but he says it's a matter of statutory construction. The states can't be sued under the quitam provision because of the use of the word persons as the entity subject to be sued, and because of the longstanding interpretive presumption, Your Honors, that persons doesn't refer to states. When 2009 dawned and Congress decided to rewrite the False Claims Act, that 2009 decision would have been fresh in their mind. It would have been clear to Congress in 2009 that if it wanted to close forever the question of whether states can be sued, all it had to do was to take out the word employers that was in the statute from 1986 and to add the word persons. Instead of doing that, which would have made this question crystal clear for all time, Congress removed the word employers and removed any notion of limitation whatsoever. That's number three. Point number four, in the Stevens' opinion, Justice Scalia focused closely on the remedy section and focused on the fact that the remedy section in the quitam statute contemplates a class of damages, punitive damages, that are not typically available against states. Well, let's look at the remedy section of the False Claims Act retaliation section. The only damages described are those that happen to be amenable to states. Those are four pieces, Judge Branch, of the text of this statute. If you put those on a scale, is there anything, candidly, that goes on the other side? Are there any textual stones that go on the other side? Well, I mean, let me just suggest something that, at least from my perspective, it makes it difficult to say that Congress was clear that states would be defendants here, and that is that states, I mean, that Congress didn't really identify anybody to be a defendant, that this statute is written in the passive voice. And so what do we do with the fact that it's not really clear, it doesn't target any specific defendant? Your Honor, that position with candors of the Court would have more force if we didn't have the 2000 context. This Court has said several times that we have to presume that Congress gets around to reading case law, that Congress understands the context of its actions. If Congress had wanted . . . I'm smiling when you're saying that because you're an interesting person to make that argument, but go ahead. Thank you, Your Honor. If Congress wanted to make it crystal clear that states could not be sued, Judge Brasher, all they had to do in 2000 was to take the word persons and to put it in the statute. Initially, the word employers was there. Judge, I take your point that there's a canon of cases that talk about general authorization not being good enough. Mr. Davis, that might be a good argument if we were riding on a clean slate. But Delmouth said that Congress may abrogate the state's constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute. Now, it didn't say if you can look at the context and make all these presumptions about what it must have intended and what its purpose was. It said look at the language of the statute. And, Judge Carnes, let me give you a quote. In the context of statutory construction, it's presumed that Congress acts intentionally and purposely in the deliberate inclusion or exclusion. That's just great. But the Supreme Court said you've got to make it unmistakably clear in the language of the statute. It didn't say and take our cases and make presumptions and look at committee reports and assume that they knew what the decisions held and so forth and so on. They basically said, Congress, this is heavy stuff. This is an amendment to the constitution we're talking about. We've got hundreds of cases about how important it is. So if you want to abrogate it, put it in the language of the statute so we won't have to have these arguments and debates. Judge, here's the simplest way I think I can answer your question. The language of the statute has to always be seen in the context of how the language has evolved over time. That's why I put Stock in the brief in here today. So it doesn't have to be, under your position, it doesn't have to be clear in the language of the statute itself. If somebody picked up the statute without being a legal scholar and just read the language of the statute and they couldn't tell whether Congress intended to abrogate Eleventh Circuit immunity or not, that's not the end of the inquiry. We've got to do legal research and have a debate about presumptions and cases and context and all that, which totally runs against the idea of clarity. Judge, that's not my position. My position is that the text of the statute clearly contains no limiting principles on who can sue or who can be sued. That's not interpretive. That is reading the plain language of the statute. But, Your Honor, as you noted in Freedmanville Water System v. the Porch Creek Indians case several years ago, analysis of the language of a statute includes looking at how words are placed within the statutory framework. The fact that 3730H1 does not mimic 3729, that is not legislative history. That's not interpretation. That is reading the statute and its text and making sense of it. So ambiguity, test of ambiguity is what makes something unclear. We have four parts of this statute that, in my opinion, textually, Judge Carnes, make it clear that Congress meant for states to be sued. Is there any textual stone on the other side? Speaking purely to the text. And, Mr. Davis, I have a question for you. You've exceeded your time, but I want to ask you about the arm of the state piece of your argument. We have longstanding binding precedent here at the Eleventh Circuit and the state of Georgia as well, that the Board of Regents of the University System of Georgia is an arm of the state for Eleventh Amendment sovereign immunity purposes. Why should we go through Mander's factors? Why are we even permitted to disregard that precedent? And, Judge, in my rebuttal, I will talk at length about arm of the state. The answer, Your Honor, is Judge Trudeau made the mistake of looking at the wrong level of generality. The test here is not, is the Board of Regents a state entity? The test is whether the Head Start, early Head Start program that Ms. Monroe directed, whether that program was functionally acting as an arm of the state. That is a very different question. Judge Carnes, you were on the panel in Lucinski. As the Court is well aware, the test in Lucinski is a functional test. We would have no need, Judge Branch, of an arm of the state test if we simply asked if the entity were a state entity. Yes, we want to know if it's a state entity, but we want to know if the function at issue is serving as a state feature. That's not exactly true. We have an arm of the state test because sometimes it is unclear if the entity is acting as an arm of the state. Do you have any case law for the support that while the Board of Regents may be an arm of the state, that we are supposed to only look at the, even though you've sued the Board of Regents, that we're supposed to look at the program that's being challenged? Lucinski. Lucinski, I would argue that virtually every time this Court has visited the question of arm of the state, it has made it very clear that it's not the identity of the entity. It is functionally what the entity is doing. This is a separate program, federally funded, federally regulated, federally created, with its own executive director and its own staff. The Board of Regents and its alter ego, Fort Valley State, are not acting as a functional entity or the arm of the state analysis is not implicated in a functional way because of the nature of the Head Start program. It is entirely federal. And again, I will address this at length in the rebuttal argument. Thank you. Mr. Bergethon. Thank you, Judge Branch, and good morning, Your Honors. We may be dealing with a question of first impression here technically, but it's not a difficult question for the reasons we've just heard. My friend keeps telling you about what's not in the statute, and that's just not how we conduct an abrogation analysis. The question, as you've alluded to several times, is what is in the statute? Did Congress make it unmistakably clear that they were abrogating the state sovereign immunity? Because that's no small thing. I mean, that goes to the very fundamentals of our system of government. And so the vast bulk of what my friend is saying just runs directly contrary to the Supreme Court's precedent, and they actually said in a task at arrow that just a general authorization for suit in federal court is not enough to abrogate state sovereign immunity. That's not unequivocal language. That's all we have here. We just have, you know, I think as Judge Brasher mentioned, we don't have mention of a defendant at all, let alone anything approaching the sort of thing that courts have found unequivocal. I mean, in Kimmel, for instance, you had a statute that referred to public entities and then made it crystal clear this means the state, the state and its agencies. And even in Kimmel, there was a dissent from Justice Thomas and Justice Kennedy saying even that might be enough. So I think that's just instructive by comparison that we're not even in the same general ballpark as that. I would submit that my friend's arguments are just squarely foreclosed by U.S. Supreme Court precedent. And the same goes for the arm of the state analysis. As you mentioned, this court has held over and over that the Board of Regents is an arm of the state. And I'm not aware of any precedent anywhere standing for the proposition that no, what we really do is look at what's happening in a particular program. As your Honors might imagine, I mean, that would completely upend sovereign immunity analysis. We look at who's being sued. If it's the state, that's the answer. It's not, well, it's the state, but they're doing things that don't seem very statish. And again, the Supreme Court has talked about that in the College Savings Bank case where they said whether the state's acting for profit or it's doing things that private individuals or corporations would normally do has no bearing on this analysis. So I think both of the plaintiff's arguments are squarely foreclosed. And I won't belabor them. I'm happy to answer. I just want to ask you, he has cited, too, Lissinsky. And as I read Lissinsky, it is true that this court, when dealing with the South Florida Water Management District, was analyzing whether or not, looking at the factors as to whether this entity was an arm of the state. But as I read Lissinsky, and correct me if I'm wrong, it was the first time this court was confronted with this entity and had to go through the analysis, whereas here, the Board of Regents, we have repeatedly held that it's an arm of the state. So I don't know that, I mean, we've got binding precedent. I don't know that we need to go through that analysis in the first instance. No, I would submit that the court absolutely doesn't. And it's not just 11th Circuit precedent. It's the U.S. Supreme Court and Lapides. I mean, that was the Georgia Board of Regents. So, yes, that's correct. And the reason it was relevant in Lissinsky was this was a very different entity. It was structured so that it had characteristics of both. It was drawing tax revenue from the local area. So a completely different animal. And really the paradigmatic case for when this Manders analysis comes in are sheriffs. Because at least, I'm not as familiar with other states' law, but at least under Georgia law, they really do kind of wear two hats and there will be local ordinances concerning them. There's not even any allegation here that that's the case. Really, all we have is an allegation that, oh, they're receiving federal funds. But, again, the Supreme Court has squarely foreclosed that and the Board of Regents of the University of California. Because in that case, it was made explicit that the federal government was not only essentially running the program, but that they would indemnify the state. So, again, I think, you know, I don't think the arm of the state analysis is even appropriate here. But even if it were, I'm not aware of any case law anywhere that supports plaintiff's theories in this case. I wanted to ask you a question about, so just about kind of the rubric that you would go through to resolve this issue. So the district court broke down the analysis into three questions. One was the statute and whether the statute is limited to persons. Then the second question was about immunity. And then the third question was about whether, you know, this is a state agency. Aren't the first two of those questions redundant? Isn't it just really one question? Does the statute allow a lawsuit against the state? I am not sure they are. I mean, functionally, and Justice Scalia has pointed this out, that they're virtually coextensive. But I think speaking more generally and not even just in this case, the question of whether a state may be sued. So, in other words, is there even a claim you can bring? I think in some cases could be distinct from the analysis of whether a state has immunity because this would be uncommon, but a state, of course, can choose to waive its sovereign immunity. So there could be types of claims where a state is technically amenable. Not amenable to state, but you could state a claim. Okay, that's a great point. So with respect to this statute, I guess, is my question then. Is the problem that you're identifying a problem of statutory interpretation where you would say, look, this just doesn't even allow you to bring a claim against the state as a matter of statutory interpretation? Or is it more the latter where, well, you may be able to bring a claim under the statute, but it's up to the state to determine whether to assert its immunity or not? Which argument are you making, I guess? I think it's more the former, if I understood it correctly, and I apologize if I didn't. Yeah, I guess I'm just trying to figure out, is this just a statutory interpretation case? Are we just asked to interpret the statute and determine whether you can sue a state under the statute? That's right. And to be clear, that, I think, if there's any issue that there's room for some argument on is that question, and that's why we've approached our argument this way in focusing on the Eleventh Amendment case. Now, we think there's a very good argument that there's not even a claim here because the False Claims Act refers back to retaliation for inaction under this section or any other efforts to stop one or more violations of this subsection. If it's clear that the state's not a person, then you can't have inaction under this section. So I think there's at least a very strong textual argument that there's no, you couldn't even state a claim here, but there's not a clearly defined order of operations, and the Supreme Court has talked about this. You, the panel, could approach this either way. You could say, I think the much clearer answer is just there's no abrogation here, and that's the end of the story. Well, on the abrogation issue, one of the things, usually in cases like this one, there's some argument that the Congress actually has the authority to abrogate state immunity. Has that been made here? Is there an issue? That's another good point, and the reason we're not arguing that is just because it wasn't raised below, but we would say even in some universe where there was a clear intent to abrogate the state's sovereign immunity, I would argue that there's not that authority in this case because that authority has to come from Section 5 of the 14th Amendment, which deals with individual rights, and here we're dealing with, we're not dealing with individual rights. We're dealing with the government's money. Right. I mean, the way for them to get around state sovereign immunity here would just be to attach it as a condition of the money, right? That, like, as agreeing to take this money, you agreed to be sued for retaliating against people for complaining about the way the money was paid. Exactly, and we've seen that Congress knows how to do that. Should that, and I guess, so, I mean, and I don't want to belabor the point, but should that be something that we think about when we think about whether, like, how to answer this question about whether Congress is trying to abrogate state immunity? I mean, should we even think about the idea of, well, this seems odd because Congress doesn't even have the power to abrogate state immunity here, so that seems like a factor that would, if we considered it all, would weigh in your favor. I think so. I don't know. It's hard to think of a way to expressly, if I were trying to write an opinion in this case, how it would expressly fit into the abrogation analysis, but certainly it's important context, I think, to know that whatever you ultimately conclude on this point, and we don't think it's a hard question, but even if you didn't, it's ultimately a futile exercise because there's just not the power there. And it's not just the individual rights question on the constitutional authority. Let's say you came up on the retaliation piece, even if you said, well, maybe there's some individual aspect to it. There's another part to that analysis, and it's whether Congress, you know, the congruent and proportional, whether Congress has shown that there's some extensive track record by the states that warrants this sort of action. So we don't have that. I don't even think you need to get there because this isn't even an individual right. But, yes, I mean, I think that's important context for the Court. The Court need not address it, but I think it is important to be aware of. Thank you, Your Honors. Thank you. And, Mr. Davis, you have reserved five minutes for rebuttal. Thank you, Your Honor. Judge Brasher, your point simply wasn't preserved by the Board of Regents. It's not briefed at any point in this case before the district court or the appellate court. With respect to the functionality issue, Judge Brasher, I want to go back to you on this question, if I could. Fryer v. Chronister is a case that comes to mind. The sheriff's offices in Florida were operating protective services programs. No question that sheriff's offices are entities that are treated a particular way under Florida law as they are in Georgia and Alabama. But the analysis did not stop at the sheriff's office in Fryer v. Chronister. It went to the protective services functions being carried out by the sheriff's office. I would submit, Your Honor, in all of the arm of the State analyses, or certainly the majority of them, there has been a parsing between the entity and the thing that is being challenged in the case. The entity here is the Early Head Start Head Start Program. That is who Taquilla Monroe worked for. That's who she was fired by. They have their own executive director. They have their own staff. They are created by Health and Human Services. They are federally funded. They are federally regulated. Your Honors, how does a program that is created, funded, and sustained by the federal government somehow turn into an arm of the State of Georgia? This is exactly what arm of the State analysis seeks to do to determine whether the cloak fits and whether it deserves to be worn. In this instance, all or three of the four arm of the State factors cut strongly against arm of the State status. Talk about the fact that it's a federally funded and created entity. So under your line of argument, even if we have in a previous case determined that a particular entity here, the Board of Regents in Georgia, even if we've made that determination, that does not bind us. In each case, we have to revisit the analysis to look at the program being challenged. Yes, Your Honor. That is exactly what Lisinski says. I think it's what this Court has said time and time again. Well, I don't know that that's exactly what Lisinski says. It's what Lisinski did in a situation where there had not, to my knowledge, been a prior determination of that entity. Judge, there's been no prior determination of whether the Head Start, Early Head Start program at Fort Valley State is a State entity. Well, we certainly have prior precedent that the Board of Regents is. But, Judge, here's where I think we may just have a different point of analysis. The functionality tests the entity, not the broader State that is sitting behind the entity. Yes, but what entity? It's always been the big entity that's being sued. Can you point to a case where we have not looked at the entity being sued, but some sub-program of the entity? Fryer v. Chronister. Fryer v. Chronister is a situation where, if I read that case correctly, the Sheriff's Office is being sued. But the question was whether or not the protective services function they were carrying out was one that meet the test. No showing in this record whatsoever that any Georgia regulation or any Georgia law affected the administration of this program. No showing in this record that any amount of control or authority from the State of Georgia affected how this program should or should not have been run. That is what arm-of-the-State analysis tests. If it were simply a State entity analysis, we wouldn't need an arm-of-the-State. Final point in the 50 seconds I have left. I go back, Judge Carnes, to your point. There is nothing ambiguous about the language in this statute. To create ambiguity actually requires looking beyond the statute to think about policy or to think about things outside the language of the statute. The language of the statute, Judge Brasher, permits everybody who's a person, contractor, or agent to sue, and there are no limits. There's nothing unclear about that. And that's all sovereign immunity abrogation tests. Is it crystal clear? I would submit that the plain language of this statute is crystal clear, and there is no ambiguity, no stones of ambiguity on the other side. Thank you. Thank you both. We have your case under advisement. That is our final case, and court is in recess until tomorrow morning.